**ORAL ARGUMENT HELD ON NOVEMBER 21, 2024**

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AMERICAN GAS ASSOCIATION, et al.,<br><br>*Petitioners*,<br><br>v.<br><br>U.S. DEPARTMENT OF ENERGY et al.,<br><br>*Respondents*. | Nos. 22-1030, 23-1285, & 23-1337 |

**RESPONDENT-INTERVENORS' OPPOSITION TO DOE'S MOTION TO HOLD CONSOLIDATED CASES IN ABEYANCE**

Intervenors respectfully urge this Court to deny the government's requested abeyance and, pursuant to the Supreme Court's remand, undertake "further consideration in light of the position asserted" in the government's cert response. *Am. Gas Ass'n v. DOE*, No. 25-879, 2026 WL 1640863 (U.S. June 8, 2026). On remand, this Court should clarify and reiterate its ruling that the best reading of the Energy Policy and Conservation Act (EPCA) does not require or allow the Department of Energy (DOE) to classify inefficient "non-condensing" technology as a "performance characteristic" protected under the Act.

## BACKGROUND

This Court's 2025 ruling interpreted EPCA to authorize DOE to update two federal energy conservation standards to levels that will complete a shift to "condensing" technology in gas-burning appliances. This Court concluded that the less efficient "non-condensing" technology is not a "performance characteristic" of the appliances that EPCA's "unavailability provision" protects from elimination. *See Am. Gas Ass'n v. DOE*, 157 F.4th 476, 493 (D.C. Cir. 2025) ("We find that, although not identical, condensing consumer furnaces and commercial water heaters offer substantially the same performance characteristics and features as non-condensing options"). The unavailability provision protects unique "performance characteristics" or "features" of regulated appliances by prohibiting the adoption of standards that would eliminate those attributes and leave no substantially similar alternatives on the market. 42 U.S.C. § 6295(o)(4).

The Supreme Court's remand for reconsideration "in light of the position asserted" in the government's brief does not identify *which* DOE position it refers to. In its response to the cert petition, DOE offered two possible positions. First, DOE cited the Department's "review[]" of these rules after the "change in Administration" and its current belief that they are "flawed." U.S. Br. at 8, 10-11, *Am. Gas Ass'n v. DOE*, No. 25-879 (U.S. Apr. 28, 2026). Second, DOE argued that this Court's decision was based on a mistaken "premise" regarding the parties' agreement on the meaning of "performance

characteristic." *Id.* at 11. DOE contended that this supposed mistake rendered this Court's reasoning "uncertain[]". *Id.* at 12. The Supreme Court's Order did not indicate which of these positions it intended this Court to consider on remand.

**STANDARD OF REVIEW**

When requesting an abeyance, "if there is even a fair possibility that the [abeyance] … will work damage to some one else," the moving party must make out "a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.").[1] Where, as here, a party seeks an abeyance of "indefinite duration," it must demonstrate a "pressing need," and any order granting such an abeyance "must be supported by a 'balanced finding that such need overrides the injury to the party being stayed.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731–32 (D.C. Cir. 2012) (first quoting *Landis*, 299 U.S. at 255; and then quoting *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971)). A court must also consider judicial economy, *Belize*, 668 F.3d at 732–33 (discussing *Landis*, 299 U.S. at 254–55, 259), which favors deciding the issues already properly before it when doing

[1] For purposes of this motion, the terms "stay" and "abeyance" are used interchangeably and the cited caselaw pertains to a stay or abeyance that pauses judicial proceedings (as opposed to a stay that prevents a judicial order or agency rule from taking effect during the pendency of ongoing proceedings).

so would "avoid re-litigation of identical issues in a subsequent petition." *AT&T Corp. v. FCC*, 841 F.3d 1047, 1054 (D.C. Cir. 2016).

## ARGUMENT

### I. DOE Has Not Justified an Abeyance.

DOE does not even attempt to demonstrate hardship. *See Landis*, 299 U.S. at 255. DOE also fails to identify any other need for the requested abeyance, *see Clinton*, 520 U.S. at 708, let alone the "pressing need" required to justify an abeyance of indefinite duration, *Belize*, 668 F.3d at 731–32 (quotation omitted).[2] Nor does DOE claim that this Court's promptly undertaking the remand directed by the Supreme Court would prevent the Department from further administrative consideration of the challenged standards.

DOE's sole purported justification for abeyance is that the Department plans "to revisit each of the three rules challenged here," and therefore "abeyance would promote judicial economy by ensuring that this Court's review is focused on enduring agency action that reflects the Department's current views." DOE Abeyance Motion at 5. The Department appears to be seeking *Chevron*-style deference to its potential

[2] DOE may not attempt to fill this void by raising such arguments for the first time on reply. *See*, *e.g.*, *Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 10 n.9 (D.C. Cir. 2011) (affirming that "arguments not raised until the reply brief are waived"). Moreover, merely "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1112 (9th Cir. 2005).

reinterpretation of the "unavailability" provision. That runs afoul of *Loper Bright*, which places the determination of that clause's best reading in this Court's bailiwick.

The Department is also ignoring EPCA's anti-backsliding provision, which prevents it from taking such action. The anti-backsliding provision prohibits DOE from prescribing "any amended standard which . . . decreases the minimum required energy efficiency, of a covered product." 42 U.S.C. § 6295(o)(1). As the Second Circuit has held, "once an efficiency standard is published, regardless of the fact that manufacturers have a number of years to bring themselves into compliance, it becomes the 'establish[ed]' standard in the statute's own language, or, in other terms, the 'required' minimum efficiency standard." *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 196 (2d Cir. 2004); *see* 42 U.S.C. § 6295(o)(1). "Consequently, and in harmony with this congressional regulatory scheme, [the anti-backsliding provision] must be read to restrict DOE's subsequent discretionary ability to weaken that standard at any point thereafter." *Id.*

In previous filings in this Court, DOE has acknowledged that the anti-backsliding provision prohibits the Department from weakening adopted standards for gas appliances. In a prior case, DOE requested that this Court vacate challenged standards so that it could promulgate weaker standards on remand—a request which was necessary in the Department's view because EPCA's anti-backsliding provision prohibits it "from adopting any new energy conservation standards unless they were more stringent than

those in the [challenged] final rule." Joint Motion to Vacate in Part at 4 n.1, *APGA v. DOE*, No. 11-1485 (D.C. Cir. Jan. 11, 2013). Because the governing statute forbids the actions DOE is contemplating, there is no warrant for an abeyance delaying the resolution of this matter.

Furthermore, this Court "ha[s] rejected the notion that an agency can stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way." *Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170, 1180 (D.C. Cir. 2025) (quotation omitted). While this Court has previously deferred pending challenges where the agency's planned rules change likely would "dispense with the need for" judicial resolution of the disputed issues, *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012), that is not the case here. Instead, it is virtually certain that the Court will be called upon to review any DOE actions that weaken the adopted standards.

In short, DOE identifies no legitimate need for an abeyance—let alone the "pressing need," *Belize*, 668 F.3d at 731–32 (quotation omitted), or "clear … hardship," *Landis*, 299 U.S. at 255, required to justify that relief given the indefinite duration of the requested abeyance and the hardship it would inflict on Respondent-Intervenors, *see infra* Point II. For this reason alone, DOE's motion should be denied.

**II. Abeyance Would Prejudice Respondent-Intervenors.**

There is more than a "fair possibility," *Landis* 299 U.S. at 255, that an abeyance would harm Respondent-Intervenors, and that harm outweighs DOE's nonexistent hardship from continuing to litigate this case. Respondent-Intervenors are the only parties still defending the rules at issue and seeking to have the standards for consumer furnaces and commercial water heaters implemented on schedule. In contrast, DOE has made clear that it is now reconsidering these standards and is "drafting a rulemaking" to address the unavailability provision's application to these products. Notice to Docket, (June 30, 2026) at 1, *at* https://www.regulations.gov/document/EERE-2014-BT-STD-0031-4108. Given DOE's statements, deferring a judgment about the legality of the rules would prejudice Respondent-Intervenors because it would likely lead manufacturers to delay meeting the adopted standards.

Legal uncertainty is already causing compliance delays and harming Respondent-Intervenors. DOE recently pledged to delay its enforcement of the standards at issue while their legal status is uncertain. *See* DOE, "Enforcement Policy Statement—Commercial Water Heaters (Apr. 24, 2026), *at* https://www.energy.gov/sites/default/files/2026-04/2026%20CWH%20Enforcement%20Policy.pdf (last visited July 15, 2026). And manufacturers are already deferring compliance actions until their obligations are clear. For example, on its website, commercial water heater manufacturer A. O. Smith states, "During the [period covered by DOE's enforcement policy], A. O. Smith will continue to

manufacture, sell, and ship non-condensing commercial gas water heaters. Previous order cutoff dates have been removed, and orders will continue to be accepted until further notice." A. O. Smith, DOE Energy Efficiency Standards for Commercial Water Heaters: Update, *at* https://www.hotwater.com/info-center/doe-regulations/doe-commercial-regulations.html (last visited July 15, 2026). DOE now seeks to prolong this uncertainty indefinitely by seeking an abeyance.

These uncertainty-driven compliance delays will harm Respondent-Intervenors and their members. For example, the state and municipal government respondent-intervenors will face higher energy costs and interference with the achievement of their greenhouse gas reduction goals. *See* Motion to Intervene at 9-13, *AGA v. DOE*, No. 22-1030 (D.C. Cir. Mar. 28, 2022) (ECF No. 1940834). Similarly, non-governmental respondent-intervenors will face reduced availability of efficient gas consumer furnaces and commercial water heaters, resulting in less opportunity to purchase fuel-efficient products. *See, e.g.*, Motion to Intervene at 17, *AGA v. DOE*, No. 23-1337 (D.C. Cir. Jan. 17, 2024) (ECF No. 2035966). In addition, the adopted standards will significantly reduce levels of nitrogen oxides and associated ozone pollution, benefitting their members living in areas where ozone levels already exceed human health-based air pollution limits promulgated under the federal Clean Air Act. *Id.* at 18. Conversely, if the Department does not implement the adopted standards, these members will continue to suffer under the status quo. These harms to Respondent-Intervenors will be

unnecessarily prolonged if adjudication of the rules at issue is delayed. The resulting compliance delays will also deprive Respondent-Intervenors and their members of the benefits of the adopted standards, to which they are legally entitled.

The harms to Respondent-Intervenors that abeyance would cause are “damage to some one else,” *Landis* 299 U.S. at 255, and weigh against granting an abeyance.

**III. Abeyance Would Waste the Resources of the Parties and the Court.**

Judicial economy also weighs against granting abeyance. If this Court denies DOE’s abeyance request, its final judgment in this case would resolve all pending challenges to the rules at issue. It should also obviate any need for DOE’s planned rescission rulemaking. If this Court confirms that the best reading of EPCA’s unavailability provision is that it does not protect non-condensing gas appliances as “performance characteristics,” DOE may determine that its deregulatory attention is better directed elsewhere.

On the other hand, granting an abeyance here would likely result in multiple lawsuits and protracted litigation over the same issues once DOE completes its contemplated reconsideration, litigation that likely would take years to resolve. Thus, this is not a case in which deferring pending challenges to a rule based on the agency’s intent to modify the rule would likely “dispense with the need for” judicial resolution of the disputed issues. *Am. Petrol. Inst.*, 683 F.3d at 388.

In sum, judicial economy favors denying the request for abeyance and addressing the merits now "to avoid re-litigation of identical issues in a subsequent petition," *AT&T Corp.*, 841 F.3d at 1054, to obviate the need for a second lawsuit altogether, and to avoid procedural complexity and protracted resolution of matters already fully briefed and before this Court.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court deny DOE's motion.

Dated: July 20, 2026 Respectfully submitted,

*/s/ Timothy D. Ballo*
Timothy D. Ballo
Kevin Breiner
Earthjustice
1250 I Street NW, 4th Floor
Washington, DC 20005
(202) 667-4500
tballo@earthjustice.org
kbreiner@earthjustice.org

*Counsel for Sierra Club, Consumer Federation of America, and Massachusetts Union of Public Housing Tenants*

Steven Banks
Corporation Counsel

Alice Baker
Assistant Corporation Counsel
Environmental Law Division
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2314
albaker@law.nyc.gov

*Counsel for City of New York*

Adeline S. Rolnick
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 513-6240
arolnick@nrdc.org

Jolie McLaughlin
Natural Resources Defense Council
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 847-6826
jmclaughlin@nrdc.org

*Counsel for Natural Resources Defense Council*

Andrea Joy Campbell
Attorney General

Turner Smith
Assistant Attorney General
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 963-2782
turner.smith@mass.gov

*Counsel for Commonwealth of Massachusetts*

Brian L. Schwab
Attorney General

Caroline S. Van Zile
Deputy Solicitor General
Office of the Attorney General for the District of Columbia
Office of the Solicitor General
400 6th Street, NW, Suite 8100
Washington, DC 20001
(202) 727-3400
caroline.vanzile@dc.gov

*Counsel for District of Columbia*

Aaron Frey
Attorney General

Emma Akrawi
Office of the Attorney General
State of Maine
6 State House Station
Augusta, ME 04333
(207) 626-8800
emma.akrawi@maine.gov

*Counsel for State of Maine*

Kwame Raoul
Attorney General

Elizabeth Dubats
Office of the Attorney General,
State of Illinois
69 West Washington Street, Suite 1800
Chicago, IL 60602
(773) 590-6794

*Counsel for State of Illinois*

Anthony G. Brown
Attorney General

John B. Howard, Jr.
Special Assistant Attorney General
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 862-2200
j.b.howard@cwt.com

Steven Jay Goldstein
Office of the Attorney General
State of Maryland
200 St. Paul Place
Baltimore, MD 21202-2021
(410) 576-6300
sgoldstein@oag.state.md.us

*Counsel for State of Maryland*

Keith Ellison
Attorney General

Peter Surdo
Special Assistant Attorney General
Office of the Attorney General
State of Minnesota
445 Minnesota Street, Suite 1800
St. Paul, MN 55101-2127
(651) 757-1061
peter.surdo@ag.state.mn.us

*Counsel for State of Minnesota*

Aaron D. Ford
Attorney General

Heidi Parry Stern
Solicitor General
Office of the Attorney General
State of Nevada
555 East Washington Avenue, Suite 3900
Las Vegas, NV 89101
hstern@ag.nv.gov

*Counsel for State of Nevada*

Matthew J. Platkin
Attorney General

David Apy
Assistant Attorney General
Division of Law
R.J. Hughes Justice Complex
25 Market St., P.O. Box 112
Trenton, NJ 08625
(609) 376-2818
David.Apy@law.njoag.gov

*Counsel for State of New Jersey*

Raúl Torrez
Attorney General

William Grantham
Assistant Attorney General
408 Galisteo Street
Santa Fe, NM 87501
(505) 717-3520
wgrantham@nmdoj.gov

*Counsel for State of New Mexico*

Ellen F. Rosenblum
Attorney General

Paul Garrahan
Attorney-in-Charge
Steve Novick
Special Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE

Robert W. Ferguson
Attorney General

Stephen Scheele
Assistant Attorney General
Office of the Attorney General
State of Washington
P.O. Box 40109
Olympia, WA 98504
(360) 586-4900
steve.scheele@atg.wa.gov

Salem, Oregon 97301-4096
(503) 947-4540
Paul.garrahan@doj.oregon.gov
steve.novick@doj.oregon.gov

*Counsel for State of Oregon*

Letitia James
Attorney General

Morgan Anna Costello
Assistant Attorney General
State of New York
The Capitol
New York State Department of Law
Albany, NY 12224-0341
(518) 776-2392
morgan.costello@ag.ny.gov

Laura Mirman-Heslin
New York State Office of the
Attorney General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-6091
laura.mirman-heslin@ag.ny.gov

Christopher Gore
Office of the Attorney General
Environmental Protection Bureau
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202
christopher.gore@ag.ny.gov

Brian Murray Lusignan

*Counsel for State of Washington*

Charity Clark
Attorney General

Hannah Yindra
Office of the Attorney General
State of Vermont
109 State Street
Montpelier, VT 05609-1001
(770) 634-3670
hannah.yindra@vermont.gov

*Counsel for State of Vermont*

Assistant Solicitor General
Office of the Attorney General
State of New York
Environmental Protection Bureau
The Capitol
Albany, NY 12224-0341
(716) 853-8465
(518) 776-2399
Brian.Lusignan@ag.ny.gov

*Counsel for State of New York*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 27(d) and D.C. Circuit Rule 27(a)(2), I hereby certify that the foregoing complies with all applicable format and length requirements, and contains 2,046 words as calculated by Microsoft Word, exclusive of the caption, signature block, and certificates of counsel.

*/s/ Timothy D. Ballo*
Timothy D. Ballo

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July, 2026, I have served the foregoing Respondent-Intervenors Opposition to DOE's Motion to Hold Consolidated Cases in Abeyance on all registered counsel through the Court's electronic filing system (ECF).

*/s/ Timothy D. Ballo*
Timothy D. Ballo